UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRY SOLOMON,
d/b/a The Industrial Board,

                Plaintiff,                      No. 14-cv-11577

vs.                                     Hon. Gerald E. Rosen

VHS UNIVERSITY LABORATORIES, INC.,
d/b/a DMC University Laboratories,

                Defendant.
_____/

### OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on October 29, 2014

PRESENT:Honorable Gerald E. Rosen
United States District Chief Judge

## I. INTRODUCTION

This breach of contract action is presently before the Court pursuant to its July 10, 2014 Order to Show Cause, directing the parties to show cause why this case should not be dismissed for lack of jurisdiction and/or for failure to state a claim upon which relief may be granted.  Plaintiff Barry Solomon timely responded and Defendant VHS University Laboratories, Inc. d/b/a DMC University Laboratories ("DMC") has replied. Having reviewed and considered the pleadings and the record in this matter and those of the companion case, *VHS University Laboratories, Inc. d/b/a DMC University*

1

*Laboratories vs. Local 283 of the International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America*, No. 13-cv-13780, the Court has determined that oral argument is not necessary. Therefore, the Court will decide this matter "on the briefs." *See* Eastern District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

This case, like the companion case, *VHS University Laboratories, Inc. v. Teamsters Local 283*, No. 13-cv-13780, arises out of a dispute over the payment of fees for the arbitration of 24 grievances filed by Teamsters Local 283 on behalf of laboratory technicians at the Detroit Medical Center (the "DMC") pursuant to a collective bargaining agreement entered into between the DMC and Local 283.[1]  Arbitration before the "Industrial Board Arbitration Committee" -- an arbitration committee composed of representatives of various local unions and employers who sit as a whole and decide grievances that have not been settled at the local level -- is the third step of the parties' collectively bargained grievance procedure. *See* CBA Article VI, § 3; Industrial Board Arbitration Committee Rules of Procedure, p. 1.[2]  Plaintiff Barry Solomon is the secretary

---

[1] The facts giving rise to this dispute are set forth in detail in the Court's October 24, 2014 Opinion and Order Regarding Cross-Motions to Vacate and to Enforce Arbitration Awards which are incorporated herein by reference.

[2] The CBA and the Industrial Board Arbitration Committee Rules of Procedure, as well as the transcripts of the deposition of Barry Solomon, are part of the record in the companion case. The Court may take judicial notice of publicly filed documents, including duly recorded documents, and court records available to the public through the

of the Industrial Board Arbitration Committee (the "Industrial Board").  The actual composition of the Industrial Board is eight local union representatives and eight employer representatives, plus the Chairman.  [*See* Industrial Board Arbitration Committee Rules of Procedure, p. 1.]  According to Solomon's deposition testimony in the companion case, the person who serves as Chairman of the Industrial Board is selected by Joint Council 43 of the International Brotherhood of Teamsters, which is the governing body of the Teamsters in Michigan.  [*See* Solomon 11/22/13 Dep., p. 12].  Steve Hicks, the president of Teamsters Local 283, became Chairman of the Industrial Board in the beginning of 2013.  *Id.* at p. 11.[3]

Solomon testified that the Industrial Board has existed for "close to sixty years," and that he has been associated with it "about fifty-four years."  [Solomon 11/27/14 Dep. pp. 145-46.]  Solomon is not, however, a voting member of the Industrial Board.  [*See* Solomon 11/22/13 Dep., p. 19.]  Rather, as the Industrial Board's secretary, he is responsible for the ministerial duties attendant with the Board's meetings and arbitration hearings.  *See id.*  Specifically, he testified that he is responsible for preparing the arbitration dockets, the transcription and mailing of the Board's decisions, arranging the

---

PACER system and via the internet. Fed. R. Evid. 201*; Daniel v. Hagel*, ___F. Supp. 2d ___, 2014 WL 1801141 at *1 n.1 (E.D. Mich. May 7, 2014); *Landt v. Farley*, 2012 WL 4473209, at *1 (N.D. Ohio Sept.26, 2012).

[3] Because of his affiliation with Local 283, however, Hicks was not allowed to sit as Chairman for the arbitration of the DMC grievances at issue in this case. *Id.* at p. 13. The Alternate Chairman, Ken Kwapisz, who is the secretary/treasurer of Teamsters Local 299, chaired the DMC arbitrations. *Id.*

location of the meetings and hearings, and arranging for Committee members' lunches. *Id.* He also does all of the billing and collects all of the fees for arbitrations. *Id.* at p. 20.

Solomon testified that as compensation for his services as secretary of the Industrial Board, he is allowed to retain a portion of the fees he collects from the arbitration parties. [Solomon 11/27/14 Dep., p. 108.] Specifically, he testified that out of the fees he collects, he pays the wages of a secretary, his office rent, maintenance expenses, postage and office supplies, and other expenses that accrue as a result of his work for the Arbitration Committee, and he gets to keep whatever is left after all expenses are paid. *Id.*

In terms of the Industrial Board's status as an entity, Solomon stated that the Board is not a corporation or a partnership; rather it is registered as a "d/b/a." *Id.* Solomon testified that he filed a d/b/a -- "Barry E. Solomon doing business as the Industrial Board" -- in Oakland County. [Solomon 11/22/13 Dep., p. 23.][4] He further testified that he

---

[4] Solomon's registration as the "Industrial Board," however, **expired** on 12/3/1994 and was never renewed. *See* Oakland County Clerk's Office Assumed Names online records at www.oakgov.com. On November 20, 2013, i.e., after the companion case was filed and only **two days before his deposition**, Solomon registered as conducting and transacting business in Oakland County under the name "Industrial Board Arbitration Committee." *Id.* [*See* Certificate of Persons Conducting Business Under Assumed Name filed by Barry Solomon with the Oakland County Clerk on 11/20/13, attached as an exhibit to the Declaration of Hakim Berry, Dkt. # 9.] Hakim Berry, the DMC's Director of Labor Relations and one of the signatories of the DMC-Local 183 Agreement, states in his Declaration that he was unaware of Solomon's filing of a d/b/a until after the companion case was filed and that the DMC never agreed to Solomon's filing of any d/b/a. *Id.*, ¶¶ 3-4.

According to the records of the Oakland County Clerk, in addition to the "Industrial Board Arbitration Committee," Solomon is also currently registered as

4

deposits all checks paid by employers for arbitrations regardless of how they are addressed into his personal checking account.  *Id.* at 23-24, 26. Although Solomon stated that this account is in both his name and that of the "Industrial Committee," only the name "Industrial Committee" is imprinted on the checks.  *Id.* at 24.

The specific issue giving rise to this dispute involves the fees for the arbitration of 24 DMC holiday grievances that were originally placed on the docket for hearing before the Industrial Board at its July 15, 2013 meeting.  *See* Compl., ¶¶ 10-18.  However, prior to the scheduled hearing, Hakim Berry, DMC's director of Labor Relations, sent Solomon a letter informing him that the DMC considered the holiday grievances to be a "group grievance," rather than 24 individual grievances, and that it was prepared to arbitrate the grievances as a single group grievance on July 15, 2013 for the total fee of sixty dollars. *Id.*, ¶ 12.  Solomon rejected the DMC's offer of a single payment of sixty dollars for the 24 grievances, which precipitated, first, an adjournment of the scheduled July 15 arbitration, and then the assessment of adjournment fees, which, in addition to the originally assessed fees for the arbitration of 24 separate grievances resulted in the DMC being required to pay $3,120.00 for the arbitration.  *Id.*, ¶¶ 11-16.  When the DMC failed to pay this sum, on Solomon's recommendation, the Industrial Board voted to default the DMC.  The result of the default was that the DMC was precluded from presenting its

---

conducting business as the "Western Michigan Industrial Board" and the "Mid-Michigan Arbitration Committee." *See* Oakland County Clerk's Office online records at www.oakgov.com.

"group grievance" argument to the Industrial Board which also had the effect of preventing DMC from proceeding to Step 4 of the grievance procedure (Final and Binding Arbitration) as Step 4 is only available to the employer to appeal group grievances or class actions, awards of the Industrial Board with a cost to the employer of over $10,000, or matters involving termination. *See* CBA Article VI, § 4.

Being unable to appeal the Industrial Board's decision to Final and Binding Arbitration pursuant to Step 4 of the collectively-bargained grievance procedure, on September 4, 2013, the DMC filed an action in this Court [No. 13-cv-13780] seeking an order vacating the adverse arbitration awards. The Union cross-petitioned for an order enforcing the awards. On October 24, 2014, the Court entered an Opinion and Order and Judgment which denied the DMC's motion to vacate the awards and granted the Union's Summary Judgment motion to enforce the awards.

## PROCEDURAL HISTORY OF THIS CASE

Shortly after briefing was completed on the cross-motions in DMC's 2013 action but before the Court ruled on those motions, on April 8, 2014, Barry Solomon filed a one-count complaint in the Michigan 46th District Court alleging "Breach of Contract as to Third-Party Beneficiary," claiming that he is a third-party beneficiary of the DMC-Local 283 Collective Bargaining Agreement "as an Arbiter for all grievances between the Defendant [VHS/DMC] and Teamsters local 283", [Compl., ¶ 8], and that "in spite of numerous demands from Plaintiff to Defendant for monies owed, the Defendant refuses to pay for the services rendered." *Id.*, ¶ 18. Therefore, as relief, Solomon demands

Judgment in the amount of $3,120.00, plus costs and attorney fees. *See id*., p. 3.

Plaintiff's 46th District Court Complaint makes no mention of the action filed by DMC in this Court or that the DMC's liability for the $3,120.00 which Solomon seeks was a contested issue that had been presented to this Court in the DMC action.

On April 21, 2014, Defendant VHS/DMC removed the action to this Court claiming, as the basis for this Court's jurisdiction, federal question jurisdiction pursuant to 28 U.S.C. § 1331 under the doctrine of complete preemption pursuant to "28 U.S.C. § 185" [sic; 29 U.S.C. § 185], as Solomon's claims "are predicated on rights created by or requiring the interpretation of the collective bargaining agreement." [Notice of Removal, ¶ 4].  The case was originally assigned to the Hon. Mark Goldsmith but was subsequently reassigned to this Court as a companion case to the DMC's 2013 case.

On July 10, 2014, the Court entered an Order to Show Cause, directing the parties to show cause in writing why this case should not be dismissed because (1) the dispute presents contract-interpretation questions for an arbitrator, not a court, to decide, and that the Plaintiff is therefore not entitled to relief from this or any court, and/or (2) whether Barry Solomon, as secretary to the Industrial Board, lacks standing to bring a § 301 breach of contract action.

<u>DISCUSSION</u>

As a general principle, the removal statutes are to be construed narrowly. *Kerr v. Holland America-Line Westours, Inc*., 794 F. Supp. 207, 209 (E.D., Mich. 1992); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872 (1941).

7

Further, "[t]he party seeking removal bears the burden of establishing its right thereto." *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). A defendant may remove an action to federal court only if that court has "original jurisdiction" over the action. 28 U.S.C. § 1441(a). If a court lacks diversity jurisdiction over an action -- as in the instant case -- in order to remove the state court action to federal court, the defendant must establish that the action "arises under" the Constitution or laws of the United States. 28 U.S.C. § 1331.

Normally, to determine whether a claim arises under federal law, a court, under the "well-pleaded complaint" rule, generally looks only to the plaintiff's complaint. *See Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96 (1936); *Louisville & N. R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42 (1908). However, the Supreme Court has developed an exception to the well-pleaded complaint rule: If Congress intends that a federal statute completely preempt an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546-1547 (1987). The complaint may, thus, be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, the plaintiff's complaint alleges only a state-law cause of action.

The complete preemption doctrine was explained by the Supreme Court in *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425 (1987):

> There does exist, however, an "independent corollary" to the well-pleaded

8

complaint rule known as the "complete pre-emption" doctrine.  On
occasion, the Court has concluded that the pre-emptive force of a statute is
so "extraordinary" that it "converts an ordinary state common-law
complaint into one stating a federal claim for purposes of the well-pleaded
complaint rule." *Metropolitan Life Insurance Co. v. Taylor*, *supra*,[481 U.S.
at 65, 107 S.Ct. at 1547. Once an area of state law has been completely pre-
empted, any claim purportedly based on that pre-empted state law is
considered, from its inception, a federal claim, and therefore arises under
federal law.  *See Franchise Tax Board* [*of Cal. v. Construction Laborers
Vacation Trust for Southern Cal.*], 463 U.S. [1,] 24 103 S.Ct. [2841,] 2854
[(1983)].

482 U.S. at 393, 107 S.Ct. at 2430 (footnote omitted).

The Supreme Court has expressly and repeatedly held that the Labor Management

Relations Act (the "LMRA") -- which is the crux of the federal jurisdiction issue in this

case -- is one such statute with "extraordinary" preemptive force.  *See e.g., Avco Corp. v.

Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235 (1968); *Allis-Chalmers Corp. v. Lueck*,

471 U.S. 202, 105 S.Ct. 1904, 1911 (1985); *Lingle v. Norge Division of Magic Chef, Inc.*,

486 U .S. 399, 108 S.Ct. 1877 (1988).

Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization
representing employees in an industry affecting commerce as defined in this
chapter, or between any such labor organizations, may be brought in any district
court of the United States having jurisdiction of the parties, without respect of the
amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Defendant in this case removed this action from state court broadly asserting that

Plaintiff's state law breach of contract Complaint is completely preempted because the

claims Plaintiff alleges "are predicated on rights created by a collective bargaining

9

agreement or which require interpretation of a collective bargaining agreement." Notice of Removal, ¶ 4.

Plaintiff Solomon's claim in this case is that the DMC-Local 283 collective bargaining agreement required the DMC to pay him the fees for the arbitration of 24 grievances totaling $3,120.00, and that by failing to pay him this sum, DMC breached the collective bargaining agreement. However, nothing in the CBA requires DMC's payment of anything *to Solomon*. The only mention of payment of arbitration fees in the CBA is in Section 3 of Article VI (Step 3 of the Grievance Procedure) where it states that for grievances placed on the docket for hearing before the Industrial Board Arbitration Committee, the "**Employer shall pay in advance *at the Secretary's office***, the sum of sixty ($60.00) dollars for each grievance. . . ." Nothing says payment is to be made *to Solomon*; it does not even say that payment is to be made ***to** the secretary*. It merely says payment is to be made "at the secretary's office."

The fee payment provision cannot be read in isolation. To discern the intent of the parties, requires construing the explicit language of a collective bargaining agreement in the context that gave rise to its inclusion and in context of the entire agreement. *International Brotherhood of Teamsters, Local 519 v. United Parcel Service, Inc*., 335 F.3d 497, 506 (6th Cir. 2003) (citing *UAW v. Yard-Man, Inc*., 716 F.2d 1476, 1480 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984)). Arguably, then, interpretation of the CBA is required to ascertain whether payment "at the Secretary's office" equates with payment "to" the Secretary, individually. Hence,

Defendant's removal of Plaintiff's Complaint on the basis of complete preemption under Section 301 of the LMRA was proper.

However, even if interpretation of the CBA is required, in cases under § 301 of the LRMA, where the CBA contains an arbitration clause, interpretation of the Agreement is a matter for the arbitrators to decide. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S.Ct. 364, 370 (1987).  "[W]here the agreement contains an arbitration clause, the court should apply a *presumption* of arbitrability [and] resolve any doubts in favor of arbitration, . . . 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *See AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648-51, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). In cases involving broad arbitration clauses the Court has found the presumption of arbitrability "particularly applicable," and only an express provision excluding a particular grievance from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf Navigation*, 363 U.S. at 584-85, 80 S.Ct. at 1353-54);  *see also United Steelworkers of America v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir.1994) (a strong presumption of arbitrability applies to disputes in which a CBA has an arbitration clause).

Here, the Court has already ruled that the issue of the DMC's non-payment of

grievance arbitration fees was an arbitrable matter properly presented to Industrial Board Arbitration Committee for resolution.  *See VHS University Laboratories, Inc. d/b/a DMC University Laboratories vs. Local 283 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Workers of America*, No. 13-13780, October 24, 2014 Opinion and Order Regarding Cross-Motions to Vacate and to Enforce Arbitration Awards.  Solomon, however, was not a signatory to the DMC-Local 283 collective bargaining agreement, nor was he a DMC employee or a member of the bargaining unit.  *See Lee v. General Motors Corp.*, 684 F. Supp. 163, 165 (E.D. Mich. 1987) (recognizing that a § 301 suit may be brought, not only by the parties to a contract -- the employer and the union -- but also by the individual members of the signatory union).[5]

While it is true that courts have held that, in limited circumstances, certain non-parties who are not employees of the signatory employer can proceed with an action for breach of contract under Section 301 of the LMRA as third-party beneficiaries of the contract without being subject to the CBA's grievance and arbitration procedures, in those cases, the rights and duties of the non-signatories were clearly stated in the terms and conditions of the contract.  *See Lee*, *supra,* 684 F. Supp. at 165 (collecting cases).

For example, in *Hazen v. Western Union Telegraph Co.*, 518 F.2d 766 (6th Cir. 1975), the Sixth Circuit held that a non-employee widow of a union employee was a

---

[5]  Like the parties to a collective bargaining agreement, employees covered by the agreement also are required to exhaust their grievance and arbitration remedies in order to proceed with a Section 301 breach of contract action.  *See Hazen v. Western Union Telegraph Co.*, 518 F.2d 766, 769 (6th Cir. 1975).

third-party beneficiary of the collective bargaining agreement governing her late husband's employment, and, as such, was entitled to bring a § 301 breach of contract action against her husband's employer to recover payment of severance pay benefits due and owing to him prior to his death because the agreement expressly provided that, "[s]hould an employee who is entitled to severance pay die before he has received payment of such pay, the amount due shall be paid over by the Company to his or her designated beneficiary or estate. . . ." *Id.* at 767.[6]  *See also Williams v. AMF, Inc.,* 512 F. Supp. 1048 (S.D. Ohio 1981) (holding that former employees of seller of manufacturing facility, who alleged that provision of labor agreement between union and buyer was intended to benefit former employees of seller with a "hiring preference," had standing to complain of alleged breach of the agreement under § 301); *Hill v. Iron Workers, Local 25,* 520 F.2d 40 (6th Cir. 1975) (suit by applicant for employment permitted because

---

[6]  The court also held that Mrs. Hazen was not required to exhaust the contractual grievance and arbitration procedures, explaining:

> The requirement that an employee exhaust his contractual remedies before bringing an action against an employer under a collective bargaining agreement is designed to prevent actions which undermine the union's authority. The furtherance of industrial peace through employee organization and collective bargaining the stated goal of the National Labor Relations Act, 29 U.S.C. § 151 would be thwarted by an employee's ability to circumvent procedures over which the union has control. The same considerations do not necessarily apply, however, when one who has never been an employee and to whom no reference is made in the provisions for grievances and arbitration seeks to enforce rights allegedly acquired through the death of an employee.

*Id.* at 769.

applicants were protected by terms of the CBA). *Cf., Chemical Workers v. Pittsburgh Glass,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 30 L. Ed. 2d 341 (1971) (a retired person who is no longer a member of a bargaining unit may elect to either pursue a federal remedy under Section 301 of the LMRA for breach of contract, or sue at common law under established contract principles to challenge a change in retirement benefits).

Here, however, Plaintiff Solomon has failed to demonstrate that he is a third-party beneficiary of the DMC-Local 283 collective bargaining agreement so as to entitle him to bring suit for breach of that agreement.

In fashioning federal substantive law in suits brought under Section 301, courts may adopt state laws in whole or in part to the extent that it is compatible with federal labor policy. *See Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457, 77 S.Ct. 912, 918 (1957). Thus, federal courts look to the applicable state law in determining whether non-signatories may sue as third-party beneficiaries for breach of a collective bargaining agreement. *See, e.g., Cement  & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994); *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819 (9th Cir. 1985).

Under Michigan law, M.C.L. § 600.1405 governs the ability of third-party beneficiaries to enforce contracts. The statute states in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person

14

whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

M.C.L. § 600.1405.

Noting that the third-party beneficiary statute is a statute in derogation of the common law, in *Koenig v. City of South Haven*, 460 Mich. 667, 597 N.W.2d 99 (1999), the Michigan Supreme Court determined that Section 1405 should be strictly construed. 460 Mich. at 677 n.3, 597 N.W.2d at 104 n.3.  Accordingly, the Court determined that, under Michigan law, only third parties who are  "direct" beneficiaries of a contract may enforce that contract:

> In describing the conditions under which a contractual promise is to be construed as for the benefit of a third party to the contract in § 1405, the Legislature utilized the modifier "directly." Simply stated, section 1405 does not empower just any person who benefits from a contract to enforce it.  Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation "directly" to or for the person.

460 Mich. at 676-77, 597 N.W.2d at 104.  The Court cautioned lower courts to avoid the "temptation to blur the distinction between direct and incidental beneficiaries" even where "the claims of putative third-party beneficiaries are ... compelling."  460 Mich. at 678, 597 N.W.2d at 105.  The Court reasoned:

> Decisions of this Court interpreting the third-party beneficiary statute are in harmony with this guarded approach. . . . This careful approach can be seen in *Greenlees v. Owen Ames Kimball Co.*, 340 Mich. 670, 676, 66 N.W.2d 227 (1954), where this Court, in setting the stage for its analysis of our third-party beneficiary statute, quoted with approval 12 Am. Jur., Contracts, § 282, p. 834:
>
> > "The principle that one not a party or privy to a contract but who is the beneficiary thereof is entitled to maintain an action for its breach is not so far extended as to give to a third person who is only indirectly and

15

incidentally benefited by the contract the right to sue upon it. An incidental beneficiary has no rights under the contract. A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach."

The import of this discussion is that as a general matter, even as it is with our statute, only intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405.

460 Mich. at 679-80, 597 N.W.2d at 105.  *Accord, Schmalfeldt v. North Pointe Ins. Co.*, 469 Mich. 422, 427, 670 N.W.2d 651 (2003) (a third-party beneficiary may enforce a contract only if the third party is an "intended" beneficiary of the contract); *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools*, 443 Mich. 176, 190, 504 N.W.2d 633 (1993) (When a contract is primarily for the benefit of the signatories, the fact that a third-party would incidentally benefit from performance of the contract does not give him the right to sue for its breach.).

The Michigan Supreme Court has also instructed an objective standard is to be used to determine, *from the contract itself*, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status.  *Schmalfeldt*, 469 Mich. at 428, 670 N.W. 2d at 654 ("[A] court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of 1405." (citations omitted).). "Where no such promise exists, that third-party cannot maintain an action for breach of contract." *Tinney v. City of Detroit*, 188 F.3d 509, 1999 WL 685921 at *4

16

(Sixth Cir. 1999) (quoting *Dynamic Construction Co. v. Barton Co.*, 214 Mich. App. 425, 428, 543 N.W.2d 31, 33 (1995)).  Thus, a person who incidentally benefits from the performance of some duty required under a contract has no rights under the contract. *Dynamic Constr. Co., supra* (citations omitted).

Applying the foregoing, Plaintiff Solomon does not have standing to sue DMC for breach of the DMC-Local 283 CBA because by its terms, the CBA does not establish that the DMC -- the alleged "promisor" -- has undertaken a promise "directly to or for" the benefit of the Plaintiff.[7]  As indicated above, the CBA provides only that Defendant is required to pay a fee of $60 per grievance and is to make such payments "at the Secretary's office."  The CBA does not require that the grievance fee be paid "directly to or for" Plaintiff.  Thus, Plaintiff Solomon is at best, an "incidental" third-party

---

[7] In his cursory brief in response to the Show Cause Order, Plaintiff argues only that he meets the requirements to establish *constitutional* standing under Article III. No one disputes that the "case or controversy" requirements for constitutional standing are met in this case.  Plaintiff, however, ignores the separate issue of *statutory* standing. Under Article III's "case" or "controversy" requirement, a party invoking federal court jurisdiction must demonstrate that he has "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S.___, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014). (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  By contrast, the determination of whether a statute permits a plaintiff to pursue a claim "is an issue that requires [courts] to determine ... whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id*. at 1387.  In other words, the question is whether the plaintiff "has a cause of action under the statute." *Id.  See also DiGeronimo Aggregates LLC v. Zemla*, 763 F.3d 506, 510 (6th Cir. 2014)  (citing *Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir.2011) (distinct from Article III standing, statutory standing asks "whether this plaintiff has a cause of action under [a particular] statute." *Id.* (citations omitted)).

17

beneficiary of the Agreement.

As indicated above, the fee payment provision cannot be read in isolation. "To discern the intent of the parties, we consider the explicit language of a collective bargaining agreement in the context that gave rise to its inclusion and in context of the entire agreement." *International Brotherhood of Teamsters, Local 519 v. United Parcel Service, Inc.*, *supra*, 335 F.3d at 506. The  CBA -- including the grievance procedure leading to "final and binding" arbitration of disputes arising under the CBA -- is "primarily for the benefit of the signatories," i.e., the DMC and Local 283, and the DMC's employees.  Plaintiff is not a signatory to the CBA and he is not a DMC employee.  The fact that Plaintiff would "incidentally benefit" from the payment of the grievance arbitration fees required by the CBA "does not give him the right to sue for its breach."

To the extent that Plaintiff Solomon claims that he is a third-party beneficiary "*as an Arbiter for all grievances between the Defendant and Teamsters Local 283*," [Compl., ¶ 6, and Affidavit of Barry Solomon (emphasis added)], not only is this allegation is directly contrary to his allegations in Paragraph 7 of the Complaint, where Plaintiff alleges that as the "secretary of the board," he merely "docketed grievances for hearings" and "attended hearings of the board as required," *id.*, ¶ 7, but also it is directly contradictory to the position Solomon took in the DMC-Local 283 lawsuit where, under oath, he vigorously *denied* participating as an arbitrator and testified that he had absolutely *no* vote on the Industrial Board Arbitration Committee in the arbitration of

18

grievances presented to the Board.  *See* Solomon 11/23/13 Dep., pp. 19-20 ("I do not

have a vote at that Board, and have never had a vote at that Board, nor did my

predecessor ever have a vote at that Board." *Id.*)  In his sworn deposition, Solomon

testified that his duties as Secretary of the Board were purely minsterial:  "My duties and

responsibilities as Secretary are one, to prepare the dockets; two, to prepare and mail

decisions; three, to arrange for the room; four, to arrange for lunch [and] what have you;

five, to be able to keep track of each grievance. . . [and] I do all the billing and collect all

the money." *Id*.  Moreover, Solomon testified that the individuals who serve on the

Industrial Board Arbitration Committee at the arbitration hearings do so as *unpaid*

volunteers.  *See* Solomon 11/27/13 Dep., pp. 144-45.  Therefore, Solomon's claim that he

is entitled to payment of $3,120.00 because he is an "arbiter" for the grievances between

the DMC and Local 283 lacks factual support.[8]

Plaintiff also claims that he is a "third party beneficiary" because he "has

registered as a doing business as (DBA)" and that the "name of that business is 'The

Industrial Board.'" [Plaintiff's Brief, p. 1]  Solomon further alleges that he is the "sole

proprietor of the Industrial  Board." *Id.*  Notwithstanding the inaccuracy of Plaintiff's

assertions, *see* note 4, *supra*, these factual allegations do nothing to establish that

---

[8] The Court finds that Plaintiff's filing of pleadings based on factual contentions
that lack evidentiary support warrants the imposition of sanctions pursuant to Fed. R. Civ.
P. 11 and/or 28 U.S.C. § 1927.  Therefore, contemporaneously with the Opinion and
Order, the Court will order Plaintiff and his counsel to show cause why such sanctions
should not be imposed.

Solomon is an intended beneficiary of the collective bargaining agreement.  Further to the extent that Solomon is attempting to argue that, while he personally may not have standing to sue, the "Industrial Board" has standing to sue as a third-party beneficiary of the contract, Solomon has characterized the Industrial Board as a sole proprietorship, and it is axiomatic that

> [a] sole proprietorship has no legal identity separate from that of the individual who owns it. It may do business under a fictitious name if it chooses, but... [d]oing business under another name does not create an entity distinct from the person operating the business.

*Patterson v. V&M Auto Body*, 63 Ohio St. 3d 573, 575, 589 N.E.2d 1306, 1308 (1992) (citations omitted).  *See also* J. William Callison and Maureen A. Sullivan, Partnership Law & Practice §2:1 *Types of Entities - Sole Proprietorships* (2014) ("[T]here is a complete identity between the individual proprietor and his or her business.").  Moreover, inasmuch as Solomon's "Industrial Board" d/b/a has long expired, he cannot rely on the non-existent assumed name as providing him with any right, let alone a third-party beneficiary right, to maintain a suit for breach of the DMC-Local 283 contract.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED, in its entirety, with prejudice.[9]

---

[9]  The Court expresses no view as to the merits of any state law breach of contract claim Solomon may have based on whatever independent arrangement he may have with the Industrial Board or any agreement the Industrial Board may have with the DMC

20

IT IS FURTHER ORDERED that within 14 days of the date of this Order,

Plaintiff shall SHOW CAUSE in writing why he and his counsel should not be sanctioned

for filing pleadings, briefs and/or other papers based on factual contentions that lack

evidentiary support in violation of Fed. R. Civ. P. 11,  and for unreasonably multiplying

the proceedings in this matter in violation of 28 U.S.C. § 1927.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  October 29, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on October 29, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

---

and/or Teamsters Local 283 to provide arbitration services for contractual disputes arising
between the union and the employer or its employees.  The Court finds only that Solomon
may not proceed, as a third-party beneficiary or otherwise, with his claim predicated upon
breach of the DMC-Local 283 labor agreement. A breach of contract claim predicated
upon an agreement separate and independent of the collective bargaining agreement
would not be preempted under the LMRA and, hence, not within the Court's subject
matter jurisdiction.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425
1987).